STATE *vs.* CHARLIE BOSWELL *et al.*

DECEMBER 31, 1947.

PRESENT: Flynn, C. J., Capotosto and Condon, JJ.

CAPOTOSTO, J.   The indictment in this case charges that Charlie Boswell, John J. Lopes, Robert Hazard and Eugene F. Hammond, on May 9, 1945, at Providence, did rob one Mary Golden.   All four defendants were found guilty by a jury in the superior court.   After motions for a new trial

by the defendants were heard and denied, Boswell, Lopes and Hammond duly prosecuted bills of exceptions to this court. Hazard was sentenced. The case is before us on the exceptions of Boswell, Lopes and Hammond to the denial of their respective motions for a directed verdict and for a new trial, and on numerous exceptions taken by each of them during the course of the trial. Hereinafter, unless otherwise specified, the term "defendants' exceptions" or terms of a similar tenor will refer to the exceptions of each defendant, singly and collectively.

At the hearing before us the defendants conceded that about noontime of May 9, 1945 Mary Golden, a married woman, then fifty-six years old, was robbed at her home in the city of Providence. In the circumstances a summary statement of the manner in which the crime was committed and of certain other acts intimately connected therewith and done in the course thereof is sufficient for our purposes.

The evidence is clear that on the day and at the time and place above indicated, Mrs. Golden, who was alone in her home, answered the doorbell and was confronted by two and possibly three young men, one of whom put his hand over her face and mouth with sufficient force to draw blood from the nose. She was then pushed into her living quarters, forced down upon a chair and her head covered with a blanket, by which time she was partially unconscious. Shortly after her assailants had fled she regained consciousness and found herself on a bed. An investigation by her soon thereafter revealed that $18 and some war ration tokens were missing from her pocketbook. Medical evidence was introduced by the state, without objection from the defendants, that in addition to injuries to the face she had been the victim of indecent assaults.

Following a meager clue in the description of her assailants by Mrs. Golden, the Providence police began to work upon the case with the result that, in co-operation with the police of Baltimore, Maryland, they first arrested the defendant Hammond in that city on or about June 26, and,

from information given by him, they shortly thereafter arrested the other three defendants in Providence. All four defendants finally signed and swore to written statements, in the form of questions and answers, confessing their respective participation in the crime.

It appears from these confessions that the four defendants met during the forenoon of May 9 and agreed to rob Mrs. Golden, expecting to get some $200. Hazard's part in the plan was to remain at the corner of Bowen and Benefit streets to warn the others if a policeman appeared. Mrs. Golden was then robbed in the manner hereinbefore outlined. The confessions disclose that in the course of the robbery at least one of the defendants committed an indecent assault on Mrs. Golden, and that other acts of depravity were committed upon her, apparently while she was in a stupor, by one or more of the others.

Under numerous exceptions the defendants now contend that the confessions were inadmissible in evidence because (1) they were not voluntary; (2) the *corpus delicti* was not proven before the confessions were admitted; (3) the confessions referred to other and independent crimes; and (4) each confession contained statements implicating the other codefendants. Before proceeding with the consideration of these contentions we note that the defense for each defendant was an alibi. The evidence in their behalf was that they knew nothing of the robbery, and that at the time in question each one was alone and in a different locality.

█ Where, on a trial for crime, the confession of a defendant is offered in evidence, the question of whether it was voluntary is in the first instance for the trial justice; but after its admission the jury may disregard it if they are of the opinion that it was not voluntary. When the confessions were offered by the state in the instant case, the trial justice heard testimony in the absence of the jury to determine whether or not such confessions were voluntarily made. In this inquiry the defendants not only cross-examined the state's witnesses at great length but they

themselves also testified freely as to the happenings preceding the taking and signing of the confessions. The defendants in substance contended that the statements, which the state termed confessions, were the creations solely of the police, and that such statements were signed and sworn to by them as a result of promises, threats and physical violence.

■ Upon consideration of all the pertinent evidence then before him, the trial justice was of the opinion that the written statements, signed and sworn to by the defendants, were voluntarily made by them and he admitted such statements as their respective confessions. We find no sufficient reason for differing with his conclusion. *State* v. *Jacques,* 30 R. I. 578.

■ In conformity with the view expressed by this court in *State* v. *Mariano,* 37 R. I. 168, at page 187, the trial justice in his charge, to which no exception was taken by the defendants, fully and carefully instructed the jury to determine for themselves whether the confessions were voluntary or the result of promises, threats or force, and that if the latter were the case they should reject any confession secured by such means, "even though you believe it to be true." By their verdict of guilty the jury showed that they believed the confessions to be voluntary, and here again we find no sufficient reason for differing with their conclusion.

■ Under contention (2) the defendants now argue that the state had not proved the *corpus delicti* when the confessions were admitted in evidence. They contend that in the absence of independent proof of the crime charged the confession alone by one accused of that crime is insufficient to prove the *corpus delicti;* and, therefore, a conviction based solely on the confession cannot be sustained. We agree with that principle of law. The *corpus delicti* cannot be presumed. A defendant is not required to answer for the alleged commission of a crime in the absence of evidence, direct or circumstantial, sufficient to establish the *corpus delicti,* which expression, according to well-established law,

means the body of the crime, that is, the mere commission of a crime irrespective of who may have committed it.

■ In the instant case the defendants, conceding that there may be evidence of the commission of the crime charged, contend that the *corpus delicti* includes both the body of the crime and defendants' agency it its commission. We know of no sound authority for such a proposition and none has been cited to us. However, before a confession is admissible there must be some evidence, independent of the confession, tending to prove the *corpus delicti*. Thereafter, the confession may be used to prove both the fact that the crime was committed and the defendant's agency therein. *State* v. *Jacobs*, 21 R. I. 259. It seems unnecessary for us to add that a defendant cannot be convicted unless the *corpus delicti* and defendant's participation in committing the crime are established by the state beyond a reasonable doubt.

■ The difficulty in which the defendants find themselves in the instant case is one of fact and not of law. They in substance now argue before us that, as the intent to steal is a constituent element of the charge of robbery, there was no evidence that the assault or assaults on Mrs. Golden were committed with intent to steal her property. They attempt to erase the damaging effect of her testimony with reference to her discovery, soon after her assailants had fled and before anyone else had entered her home, of the disappearance of $18 and some war ration tokens from her pocketbook, by arguing that there was "no evidence that anyone took them (either money or tokens) with the intent to steal them." This argument is clearly without merit. Apart from the confessions, there was evidence from which a jury could find that Mrs. Golden was assaulted by the then unknown persons for the purpose and with the specific intent of stealing her money or other property. In the circumstances here there was evidence tending to prove the *corpus delicti* before the confessions were admitted.

■ Defendants' contention (3) is that the confessions were inadmissible because they contained references to distinct and different crimes. Ordinarily it is improper to allow evidence directly or indirectly of a crime wholly independent of that with which a defendant stands charged. But that is not the situation in the instant case. The crime of robbery is committed if the property of another is feloniously taken from his person or presence forcibly and against his will. Mrs. Golden was subjected to different continuous assaults of varying character from the time that she answered the doorbell to the time that her assailants fled, leaving her almost senseless on the bed. All the acts that were mentioned in the confessions were committed in the course of the robbery and were so intimately connected therewith as to constitute a part of the *res gestae*. The overwhelming weight of authority is that in such or similar circumstances the entire confession is admissible against the defendant who made it, notwithstanding that it may also refer to other crimes. 22 C.J.S. 1440, §820. For a case with circumstances similar to those in the instant case, see *Commonwealth* v. *Parker,* 294 Pa. 144.

■ Defendants' contention (4) is that each defendant was prejudiced by statements in the confession of a codefendant implicating him in the commission of the robbery. If a defendant believes that the confession of a codefendant contains matter prejudicial to him, it is within his power to move that such matter be suppressed or deleted from the confession. In the instant case none of the defendants moved, either at the time that the confessions were admitted or at any other time thereafter, that the matter now claimed prejudicial be suppressed or deleted from the confessions. Furthermore, the transcript clearly shows that when the confessions were admitted the trial justice admonished the jury that each confession bound only the defendant who made it and that they should not use any statement therein contained as proof of guilt of any codefendant. Similar instructions in plain language were again

given to the jury in the charge, to which no exception was taken on any ground by any defendant.

For the reasons stated, the exceptions of the defendants to the admission in evidence of the confessions are overruled.

Under another group of exceptions the defendants contend that the trial justice committed reversible error in his additional instructions to the jury, in that such instructions tended to coerce them to reach a compromise verdict. It appears that the trial justice, on his own motion, recalled the jury when they had not reached a verdict after some eight hours of deliberation, and, upon learning that their difficulty was one of fact and not of law, he called to their attention the importance of a jury's verdict under our system of law. He opened these remarks by saying that he was "a bit disappointed that we haven't been able to have this matter determined before this hour." Incautious though this remark may have been, we are of the opinion that the defendants were not prejudiced thereby, as nowhere in what followed is there any indication, directly or by inference, showing the nature of his disappointment, or suggesting in any way what the verdict should be, or that the jury must agree.

The defendants strongly rely on the case of *Texas Midland R.R.* v. *Brown,* 228 S.W. (Texas) 915, where a certain expression in connection with other matters of a truly prejudicial character was held improper by that court. Even a superficial reading of that case will show that it is clearly distinguishable from the case at bar. In the *Texas Midland R. R.* case the trial justice, accepting the suggestion of a deputy sheriff to "lecture" the jury so that they would arrive at a verdict, told them that he did not feel warranted in discharging them as he had "made it a rule to keep the jury together until a verdict was reached." No such coercive language appears in the instant case.

The defendants further attempt to strengthen their claim of prejudice by selecting various phrases and statements

in the instructions and, disassociating them from their context, they argue therefrom reversible error. Having in mind their entire claim on this point, we have examined the instructions and, when read as a whole, we find nothing therein prejudicial to the defendants. The trial justice stated several reasons as to the importance of an agreement, among them being the following: that the jury then before him was as well qualified as any other to decide the case; that the case had been exhaustively tried; and that another trial would entail additional expense upon both the state and the defendants.

In substance and effect the trial justice merely asked the jury to continue consideration of the case and advised them to try for an agreement through the process of fair discussion and dispassionate reasoning. Nowhere did he tell them, by direct statement or otherwise, that they must come to an agreement, or that any juror should surrender his honest conviction for the sake of a verdict. On the contrary he plainly said to them: "I ask no one of you to do anything that you cannot conscientiously do." We fail to see reversible error in these instructions. See *State* v. *Scott,* 123 A. (R.I.) 292. Defendants' exceptions on this point are overruled.

[■ The only other exceptions remaining for consideration are to the denial of defendants' motions for a directed verdict and for a new trial. As the evidence stood at the close of the case and applying thereto our well-settled rule governing a direction of verdict, the evidence clearly presented questions of fact for a jury to determine. Defendants' exceptions to the denial of their motions for a directed verdict are without merit and are overruled.

Defendants' exceptions to the denial of their motions for a new trial are equally without merit. The jury found the defendants guilty and the trial justice, who had the opportunity of hearing and seeing the witnesses while testifying, approved that verdict in a carefully prepared rescript which clearly shows that he did not overlook or

misconceive any material evidence in the case. Under these exceptions the defendants persist in urging that the confessions were not voluntary and then argue that, as the confessions were the vital evidentiary link connecting the defendants with the crime, a "consideration of the testimony surrounding these statements leads one to the inevitable conclusion that another jury should pass upon the question as to whether in fact the statements are the statements of the four defendants." We have examined the evidence, giving particular attention to the nature of the confessions and other points urged by the defendants, but we cannot say that the decision of the trial justice, upon his independent review of the evidence, was clearly wrong. The exception under consideration is overruled.

The exceptions which have not been briefed or argued are deemed to be waived.

All of the exceptions of each and every defendant are overruled, and the case is remitted to the superior court for further proceedings.

*John H. Nolan*, Attorney General, *Raymond F. Henderson*, Special Counsel, for State.

*Aram A. Arabian,* Public Defender, for defendants Charlie Boswell and John J. Lopes.

*Joseph Mainelli,* for defendant Eugene F. Hammond.