290 A.2d 855.

STATE *vs.* DAVID POMBO.

MAY 19, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

134

PAOLINO, J. The defendant was indicted for knowingly and willfully striking a uniformed police officer while the officer was engaged in the performance of his duty and causing him bodily injury in violation of G.L. 1956, §11-5-5,[1] as amended by P.L. 1968, ch. 76, sec. 1. He was tried before a justice of the Superior Court sitting with a jury and was found guilty as charged. The case is here, on the defendant's exceptions to certain rulings by the trial justice during the trial and to the denial of his motion for a new trial.

The facts may be briefly stated. The incident occurred at a tavern in the city of East Providence. Shortly after midnight on the morning of February 24, 1968, defendant, along with his brother, Robert, and a friend named Joseph

---

[1]Section 11-5-5, as amended, read as follows:

"Assault of police officers and firemen.—Any person who shall knowingly and wilfully strike a uniformed member of the state police, metropolitan park police, conservation officers, state properties patrolman, or city or town police forces or fire departments causing bodily injury while the member is engaged in the performance of his duty shall be deemed to have committed a felony, and shall be imprisoned not exceeding three (3) years or fined not exceeding fifteen hundred dollars ($1500.) or both."

Tedum, entered the tavern. They were asked to leave the premises because the establishment was filled to capacity. Two police officers, special officer George Edward Shea and a patrolman Branco, attempted to escort defendant and his companions out of the tavern and as a result an argument ensued.

The state presented testimony that defendant grabbed one of the officers' nightsticks and started swinging it, striking a customer by the name of Doyle on the head. The defendant's version is that he was struck in the head with the nightstick and then pushed outside the door. The state presented direct testimony that defendant then struck officer Carey across the eye and across the bridge of the nose with the nightstick. The defendant's version is that he, defendant, was clubbed several times and did not have the nightstick in his hand that night. The defendant was taken to the police station. Officer Carey was subsequently taken to the hospital where he received medical attention for his wound, which was located on his forehead and which he claimed was the result of being struck by defendant while the nightstick was in defendant's possession.

Under his exceptions defendant raises five questions which he has briefed and argued under three main points. For convenience we shall treat them in like manner.

I

The first three questions involve certain evidentiary rulings by the trial justice admitting into evidence State's Exhibits 1, 6 and 7. Exhibit 1 is a photo taken several hours after the incident occurred, and was introduced for the purpose of identification of the wound caused by defendant. It shows the stitches made by the doctor in treating the cut on officer Carey's forehead.

The defendant argues that after the doctor stitched the officer's forehead the wound appeared much greater than

it would have appeared had the photograph been taken before the stitches were made and what would have appeared to have been a small cut before the stitching looked much worse after the stitching. He contends that the viewing of the photo left a very strong impact on the minds of the jurors and the only logical assumption that could be drawn is that the photo did in fact inflame the minds of the jurors and defendant was prejudiced. We find no merit to defendant's argument on this issue.

The rule is well-settled in this state that the determination of the relevancy and materiality of photographs is ordinarily within the sound discretion of the trial justice. *State* v. *Kieon,* 93 R. I. 290, 295, 175 A.2d 284, 287 (1961). The existence of bodily injury is of prime importance in a case charging a violation of §11-5-5, as amended. Bodily injury sustained in the performance of duty is an essential element of the offense charged. The photo was certainly relevant. The fact that the sutures appear very prominently in this photo is no reason for barring its use. The defendant has failed to persuade us that the sole purpose of offering this photo into evidence was to inflame the jury, *see State* v. *Winston,* 105 R. I. 447, 252 A.2d 354 (1969). In the circumstances here, considering the nature of the offense charged, defendant has likewise failed to convince us that the admission of Exhibit 1 amounted to an abuse of the trial justice's discretion.

During oral argument defendant's counsel conceded that the introduction of Exhibits 6 and 7 did not constitute reversible error. The defendant's exceptions to the introduction of those exhibits are therefore deemed to be waived.

## II

The defendant's next assignment of error involves an incident that occurred during the trial. The foreman of the jury sent a message to the trial justice requesting that certain testimony be read back by the court stenographer.

After the testimony was re-read defendant's counsel addressed the court and complained that one of the jurors appeared to be asleep while the stenographer was reading back the testimony. During a colloquy which ensued between the trial justice and defendant's counsel, the trial justice stated that he disagreed with defendant's counsel and that he did not think the juror in question was asleep.

The defendant now argues that the failure of the trial justice to declare a mistrial at that point or, in the alternative, to question the juror constitutes reversible error. We do not agree. The defendant did not move for a mistrial nor did he request that the trial justice question the juror. The transcript contains no ruling by the trial justice to which defendant's counsel could have excepted with respect to the latter's claim that the juror in question was asleep. The only thing the record shows is the following statement by defendant's counsel:

> "* * * and I might also add, your Honor, that juror number twelve was asleep during most of the reading of the Shea testimony. I take exception to that."

In any event, even if we assume that this issue is properly here, we fail to see any merit to defendant's argument. The trial justice found that "juror number twelve" was not asleep. This finding will not be disturbed by this court unless defendant persuades us that it is clearly wrong. This he has failed to do.

### III

We come finally to defendant's exception to the denial of his motion for a new trial. The trial justice, after reviewing the conflicting testimony, expressly stated that the witnesses for the state were credible and at the same time he expressly rejected, as not credible, the testimony of defendant, his brother and his friend, Joseph Tedum. In the light of what he termed "the overwhelming evidence of the State's witnesses" he concluded that the state's

case against defendant was clearly proved beyond a reasonable doubt and accordingly denied defendant's motion.

It is clear that the trial justice performed his duty in passing on the motion for a new trial. That being the case his decision will not be disturbed by us unless the defendant establishes that his findings are clearly wrong or that he has misconceived or overlooked material evidence on a controlling issue. The trial justice's findings are supported by competent evidence and there is a complete failure by the defendant to show any misconception or overlooking of material evidence by the trial justice. Therefore it was not error to deny his motion for a new trial.

All of the exceptions which the defendant has briefed or argued are overruled, and the case is remitted to the Superior Court for further proceedings.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for plaintiff.

*James Cardono,* Public Defender, *Moses Kando,* Asst. Public Defender, for defendant.