317 A.2d 440.

STATE *vs.* JO ANN RANIELLO.

APRIL 11, 1974.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

DORIS, J. The defendant, Jo Ann Raniello, was indicted by the grand jury on two separate charges of robbery. The indictments were consolidated for trial and the defendant was tried to a Superior Court justice and a jury which returned a verdict of guilty on each indictment. The defendant is now here on her bill of exceptions wherein she assigns as errors a portion of the trial justice's instructions to the jury and the denial of her motions for a new trial.

The record discloses that on December 30, 1968, and again on January 13, 1969, three masked men held up and robbed the United Transit Company located on Elmwood Avenue in the city of Providence. Another man waited outside in a car to provide a getaway. After taking a sum of money, the three men left the building, entered the car in which the fourth man was waiting, and drove off. These four men, Richard Frank DeFreitas, Louis Robert DePaulo, Joseph Bourgault and Harold Vincent Nichols were indicted, together with defendant and charged with both robberies.

At the time of defendant's trial in Superior Court, three of the men were serving sentences at the Adult Correctional Institutions on the robbery charges. The fourth man, Harold Vincent Nichols, had received a suspended sentence and a deferred sentence for his part in the robberies.

Nichols testified in relation to the robbery of December 30 and stated that he, DeFreitas and defendant met in a lounge in Pawtucket and planned the robbery of the United Transit Company, and that later DePaulo and Bourgault joined them and participated in the planning of the robbery. He further testified that he drove a car occupied by

himself and the other men to the United Transit Company. The other three men, who were masked and armed with guns, entered the building while Nichols remained outside waiting in the car. Nichols stated that defendant waited in a second car about five or six blocks away. He further testified that when the three men came out of the building, they entered the car in which he was waiting and that he then drove to the location of the second car in which defendant was sitting in the driver's seat. DeFreitas and DePaulo then left the car Nichols was driving, taking the money and guns with them, and entered the car in which defendant was sitting. Nichols had no knowledge of whether defendant drove the car because he departed from the scene immediately. The four men and defendant later met outside Dot's Lounge in Pawtucket and divided the proceeds from the robbery into four parts. Nichols testified that defendant did not receive any share of the money from the robbery.

Nichols then testified in relation to the January 13, 1969 robbery and stated that on January 12, he, DeFreitas and defendant met in a lounge in Pawtucket to discuss a second robbery of United Transit Company. It was decided that defendant was to drive one of the two cars to be used in the robbery. The three plotters departed from the lounge and drove to Bourgault's house where the plans for the robbery were further discussed. The three men and defendant then picked up DePaulo and proceeded in two cars to a point about five blocks from the United Transit Company. The defendant remained in one car while the four men proceeded in the other car, driven by Nichols to the United Transit Company. The January 13, 1969 robbery was executed in substantially the same manner as that on December 30, 1968, except that shots were fired during the robbery and Nichols and Bourgault were apprehended by the police after the second robbery before they were able to

rendezvous for a division of the loot. According to Nichols, there was never a division of the money from the robbery. At the time of the robberies, defendant was the girlfriend of DeFreitas, whom she married previous to her trial in Superior Court.

DeFreitas testified and admitted that he participated in the two robberies at United Transit Company substantially as testified by Nichols, but insisted that defendant never was involved in them either as a planner or as a participant. He stated that she knew nothing of the robberies and that she was present in the car on the occasions of both as a passenger having gone along only for the ride.

DePaulo also testified, admitted his participation in the robberies and stated that defendant was present only as a passenger in the car and that she was never a participant in the actual robberies or in the planning thereof. He further testified that defendant did not receive any share of the robbery loot.

The defendant first contends that the trial justice erred in instructing the jury at the close of the trial as follows:

"If on the basis of all the evidence you are satisfied beyond a reasonable doubt that the Defendant on December 30, 1968, knew that the United Transit Company office was to be robbed, and having that knowledge waited at some point or place for the purpose of rendering any assistance to the robbers in furtherance of the robbery, it's your duty to return a verdict of guilty against her of robbery in Indictment 69-381. If she had any knowledge and waited at that place and waited for that purpose, it does not matter how far distant she waited from the place of the robbery. If, however, you are not so satisfied by the State, it is your duty to return a verdict of not guilty on that indictment.

Similarly, if on the basis of all the evidence you are satisfied beyond a reasonable doubt that the defendant, on January 13, 1969, knew that the United Transit

Company office was to be robbed, and having that knowledge waited at some point or place for the purpose of rendering any assistance to the robbers in furtherance of the robbery, again it is your duty to find her guilty of robbery in Indictment 69-380. And, again, if she had that knowledge and waited for that purpose, it does not matter how far distant she waited from the place of the robbery. If you are not satisfied that the State has proved these elements to you beyond a reasonable doubt, it is your duty to find her not guilty on that indictment."

She argues that the instructions complained of were prejudicial in that mere knowledge of a crime without any overt act to aid or abet is not the commission of the crime itself. The defendant contends that in view of the circumstances of the case the instructions were misleading in that the jury may have concluded that defendant knew about the robberies and that the knowledge alone would be sufficient to hold her responsible for the acts of the principal. In other words, defendant argues that the act of merely sitting in a car five or six blocks away from the scene of a robbery is not sufficient to implicate one as a principal in that robbery even though such a person may have knowledge of the crime. Participation, however, is a matter of degree, since one may participate in a crime without actually being present.

In *State* v. *Colvin*, 82 R. I. 212, 107 A.2d 324 (1954), this court held that one who waits at the scene of a crime to assist the actual perpetrators in getting away may be properly charged as a principal.

In the case of *State* v. *Hart*, 106 R. I. 213, 258 A.2d 70 (1969), we said that presence is to be determined not by mere spatial contiguity but rather by the purpose to be served by the waiting person. *See also Thomas* v. *State*, 2 Md. App. 502, 235 A.2d 777 (1967); 21 Am. Jur.2d, *Criminal Law* §121 (1965).

When we relate these enunciated principles to the evidence in this case, it is clear that the instructions given by the trial justice adequately and properly delineated the requisite elements for a finding of guilt and were not prejudicial to defendant.

We next consider defendant's exception to the denial of her motions for a new trial. The trial justice after reviewing the testimony stated that the testimony of Harold Nichols, witness for the state, was credible, and expressly rejected as not credible the testimony of the witnesses for defendant. He therefore concluded that the verdicts responded to the merits of the controversy and that substantial justice was done, and accordingly denied defendant's motions.

It is clear that the trial justice performed his duty in considering the motions for a new trial. It is well settled that the decision of a trial justice on motions for a new trial will not be disturbed in the absence of a showing that his findings are clearly wrong or that he has misconceived or overlooked material evidence on a controlling issue. *State* v. *Pombo,* 110 R. I. 133, 290 A.2d 855 (1972). Here the trial justice's findings are supported by competent evidence, and the defendant has failed to show any misconception or overlooking of material evidence by the trial justice. It was not error to deny the defendant's motions for a new trial.

The defendant's exceptions are overruled and the case is remitted to the Superior Court for further proceedings.

Mr. Chief Justice Roberts did not participate.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for plaintiff.

*Bevilacqua & Cicilline, Joseph A. Bevilacqua, John F. Cicilline,* for defendant.