339 A.2d 730.

STATE *vs.* RAYMOND WILBUR *et al.*

JUNE 18, 1975.

PRESENT: Roberts, C. J., Paolino, Kelleher and Doris, JJ.

8

KELLEHER, J. The defendants, Raymond Wilbur, Ronald J. Asselin, and James E. Rogers were tried on a joint indictment which charges them with setting fire to a cocktail lounge in downtown Providence, a violation of G. L. 1956 (1969 Reenactment) §11-4-3. A Superior Court jury returned guilty verdicts against all three defendants. Wilbur and Asselin have taken appeals.

At about 3:30 a.m. on Wednesday, April 25, 1973, Patrolmen Zienowicz and Lopez were in their police cruiser. They had just transported a prisoner to Providence Police Headquarters at La Salle Square, and were returning to the South Providence area to resume their

patrol. The officers were proceeding south along Empire Street about a block away from headquarters when they smelled smoke. As they came to Westminster Street, they looked to the east and observed a man running out of Aborn Street onto the Westminster Street Mall headed toward Snow Street. The officers turned left on Westminster Street and drove onto the mall in pursuit of the late-night jogger who was subsequently identified as Wilbur.

As the officers drove past the intersection of Aborn Street and the mall, they saw smoke and flames spouting forth from the first floor of an Aborn Street building. The officers pursued the fleeing figure and finally caught up with Wilbur as he turned off the mall onto Snow Street. This was about one block southeast of where they first caught sight of him.

As the patrolmen turned into Snow Street, they saw Wilbur trying to get into the front seat of the passenger side of a parked car that was occupied by Asselin and Rogers. Rogers was in the driver's seat and Asselin was seated in the middle next to Rogers. As Officer Zienowicz approached the automobile, he saw Asselin reach into his pocket, remove an object, and attempt to secrete it on the floor of the car. The object was seized; it was a .22 caliber blank pistol.

During a routine pat down before placing the trio into the cruiser, a cap to a gasoline cannister was found in Rogers' pocket. Both officers testified that they smelled gasoline that emanated from Wilbur's clothing. The state conceded that tests made by the experts of the Federal Bureau of Investigation on Wilbur's clothing produced no evidence that it had been impregnated with gasoline.

The officers testified that the fire had taken place at the Erin Lounge. They also told the jury that when they

apprehended Wilbur, he told them that he was running away from his girlfriend. He also informed them that he did not know either of the individuals who were seated in the car he was attempting to enter on Snow Street.

A witness who testified on Wilbur's behalf told the jury that she had met Wilbur in an all-night diner at about 3 a.m. He told her that he had had a spat with his girlfriend. The witness explained how she had convinced Wilbur to call his girlfriend and "make up." When she and Wilbur parted at approximately 3:15 a.m., Wilbur was walking up the mall to meet his "girlfriend." This witness explained to the jury that Wilbur's girlfriend was going to drive in from her home in Cranston and rendezvous with Wilbur at a Westminster Street hotel that was situated just west of the intersection of Empire and Westminster Streets.

Following his arrest, Rogers gave a statement to the police in which he admitted that he had purchased the gas and brought it from the car to the Erin Lounge. The statement was admitted as a full exhibit after all references to Wilbur's and Asselin's part in the episode had been deleted from its contents.

The appeal concerns a number of evidentiary rulings made by the trial justice and his denials of motions for judgments of acquittal and a motion for a new trial which had been filed by Asselin.

The Erin Lounge was located on Aborn Street in a building owned by Central Real Estate Company, Inc., a Rhode Island corporation. The building's address was 19-29 Aborn Street. The first witness for the state was the corporation's assistant secretary and office manager. She had worked for Central Real Estate for over 30 years and had been a corporate officer for a year and a half. The witness told the jury that the corporation did indeed own the property at the Aborn Street address.

Asselin and Wilbur argue that since the indictment charged them with burning a building owned by Central Real Estate, the state was bound to prove ownership by the use of the "best evidence" rule, to wit, the deed or a duly certified copy of the deed showing the requisite ownership. Oral assertions as to who holds title to the property, they claim, are not enough because at some subsequent date, they might be tried for burning some other building owned by Central Real Estate which does not bear the Aborn Street address.

The defendants misconceive the purpose of the best evidence rule and their double jeopardy fears are unfounded. The primary purpose of the criminal law is the preservation of the public peace. The trial in the Superior Court was not a suit where Central Real Estate was seeking to recover on its insurance policy. The defendants were being tried for an offense against the "peace and dignity of the State," where the injured are the citizens of Rhode Island and not merely the individual who may be the victim of the offense. State v. Gilligan, 23 R. I. 400, 50 A. 844 (1901); cf. State v. Boudreau, 113 R. I. 497, 322 A.2d 626 (1974). The only necessity for specifying ownership in the present indictment was to enable the accused to prepare an adequate defense and protect them against the threat of a second prosecution for the same offense. State v. Murphy, 107 R. I. 737, 271 A.2d 310 (1970); State v. Gilligan, supra. Here the proof offered accomplished both purposes.

Proof of ownership of the Aborn Street property was a collateral issue since it was not essential to proof of either the crime charged or defendants' participation in the torching of the lounge. Consequently, the secretary's statement as to who owned the burned-out premises was sufficient to establish the identity of the premises. Wigmore has pointed out that "* * * where the terms of a

document are not in actual dispute, it is inconvenient and pedantic to insist on the production of the instrument itself and to forbid all testimonial allusion, however casual, to its terms * * *." 4 Wigmore, *Evidence* §1253 at 595 (Chadbourn Rev. ed. 1972). Here, there was no serious challenge that Central Real Estate did not own the Aborn Street property. We see no error in the trial justice's allowance of the proof of ownership. The premises were sufficiently identified so that defendants' rights were fully protected.

To prove that the fire at the Erin Lounge was caused by arson rather than an accident, the state produced an inspector employed by the Providence Fire Department. The inspector had arrived at the fire scene within minutes after the fire alarm was sounded. This witness described the heavy black smoke and the flames that billowed forth from the front of the building. At one point when the fire was still enveloping the rear portion of the premises, he entered the bar. He told the jury that upon entry, he smelled gasoline. He was permitted to testify that in his opinion the Aborn Street blaze was set by a person who used some petroleum based liquid such as gasoline to ignite the fire. Here, as at the trial level, defendants questioned the inspector's competency to give an opinion as to the source and cause of the conflagration.

Whether a witness is competent to testify as an expert is a matter that rests within the sound discretion of the trial justice and will be disturbed only in cases of a clear abuse of that discretion. *State* v. *Robertson*, 108 R. I. 656, 278 A.2d 842 (1971); *State* v. *Tutalo*, 99 R. I. 14, 205 A.2d 137 (1964). The requisite expertise, we have said, may have been acquired by study, observation, practice, or experience. *Morgan* v. *Washington Trust Co.*, 105 R. I. 13, 249 A.2d 48 (1969). The defendants' challenge of the witness' qualifications rests primarily on the paucity of

his formal classroom training and his inabilty to specifically describe the contents of the seminars he had attended. While the witness might be shy on schoolbook learning, he is long on the practice and experience.

At trial time he had been a member of the department for over 10 years. The first 6 months of his career were spent in the classroom where he was taught the "chemistry of fires." He worked 7 years "on the front line" of fire prevention. Upon being assigned as a fire inspector, he participated in formal seminars, some of which were conducted by a fire insurance company whose headquarters are located in Rhode Island. As a novice inspector, he spent several months going out to investigate in the company of a senior officer who acted as a teacher in an endeavor which for want of a better term could be described as an on-the-job-training program. When he assumed the witness stand, the witness had been an inspector for 3 years. His division inspects about ten fires a day.

Most of defendants' contentions as to the inspector's expertise are certainly relevant only to the weight to be given his opinion and his qualifications. We see no error in giving the jury the assistance of the inspector's on-the-scene observations.

One of the exhibits is the signed confession given by Rogers. The defendants challenge the use of this document. The arguments are based upon the holdings of *Bruton* v. *United States,* 391 U. S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and *State* v. *Boswell,* 73 R. I. 358, 56 A.2d 196 (1947). We will take the *Boswell* argument first and then consider the *Bruton* contention.

*Boswell* stands for the proposition that, in absence of some corroborative evidence tending to prove the corpus delicti, a confession or self-incriminating statement will not be admitted into evidence because such an uncorroborated statement is insufficient to prove the corpus delicti.

We have, however, emphasized that the so-called corpus delicti need not be proved beyond a reasonable doubt before the admission can be admitted into evidence. *State v. Jardine,* 110 R. I. 491, 293 A.2d 901 (1972); *State v. Mantia,* 101 R. I. 367, 223 A.2d 843 (1966); *State v. Wheeler,* 92 R. I. 389, 169 A.2d 7 (1961). The record indicates that prior to its offering Rogers' confession, the state had elicited competent evidence, which if believed, indicated that the fire that enveloped the Erin Lounge had been intentionally set.

In *Bruton,* a confession given by one codefendant implicating another defendant was introduced into evidence. Since the maker of the confession did not take the stand, the second defendant, Bruton, was unable to confront him with respect to those portions of the confession that inculpated Bruton. The Supreme Court ruled that Bruton had been denied his constitutional right of confrontation and that the trial justice's charge that the jury was to consider the confession only so far as it related to the maker's guilt did not adequately protect Bruton.

As a result of *Bruton,* if the prosecutor in a joint trial intends to use a confession of one of the defendants, appropriate steps must be taken to preserve the sixth-amendment rights of the other codefendants. One way to accomplish this goal is to seek a severance pursuant to Super. R. Crim. P. 14. Asselin and Wilbur made no effort. Another device was suggested in *Bruton v. United States, supra* at 133-34, 88 S.Ct. at 1626, 20 L.Ed.2d at 483-84 and n.10, and is now embodied in Rule 14. It is the use of an edited confession in which any reference to the other codefendants is deleted. Here an edited confession was used by the prosecutor and it makes no reference whatever to either Asselin or Wilbur.

However, defendants claim that despite the editing efforts the redacted confession implicitly incriminates

them. They contend that the jury, after hearing all the evidence, would be able to conclude that the gaps which appear in the confession had to relate to them. Thus, they conclude that Rogers' statement when placed in juxtaposition with the other evidence which was presented to the jury is unquestionably incriminatory.

While this argument has some surface appeal, its logic is faulty. The evidence which linked Asselin and Wilbur to Rogers on the evening in question came from the testimony of Officers Zienowicz and Lopez. They took the stand, and the truth of their testimony was subject to verification by cross-examination. Thus, the truly inculpatory evidence which related to either Asselin or Wilbur had been explored in great detail by the cross-examination of each of their attorneys.

This is not to say that all confessions in which the names of codefendants are deleted will pass muster. There may be times when the deletions are not sufficient to avoid the incriminatory effect of the statement itself. *United States ex rel. LaBelle* v. *Mancusi,* 404 F.2d 690 (2d Cir. 1968). However, such a fault is not present in the expurgated version of Rogers' confession. The defendants gain no benefit from *Bruton*.

We come now to defendants' contention that their respective motions for a judgment of acquittal should have been granted. Asselin's motion was made at the conclusion of the state's case. Wilbur's motion was initially made at the same time as Asselin's and it was renewed after his witness had testified to their early morning encounter at the diner. Asselin had rested at the time his motion was made.

Once such a motion is made, the trial justice views only the evidence relied on by the state as warranting submission of the case to the jury, and assesses the evidence in the light most favorable to the state while drawing there-

from all reasonable inferences that are consistent with guilt. Neither credibility of witnesses nor the weight of the evidence is before the court. *State* v. *Crescenzo,* 114 R. I. 242, 332 A.2d 421 (1975).

If we view the evidence in the light most favorable to the state, it shows that at 3:30 in the morning Wilbur with his jacket smelling of gasoline fled from the scene of a deliberately set fire. He ran to a waiting car whose engine was running. As he was in the process of getting into the front seat alongside Asselin, Officer Zienowicz caught up with him. When the officers were some 10 feet from the parked car, Asselin took a pistol from his jacket and placed it on the vehicle's floor. A search of the driver disclosed the cap to a gasoline cannister. This evidence warranted the trial justice's submission of the entire case to the jury.

In his charge to the jury, the trial justice pointed to the absence of any direct evidence implicating Asselin or Wilbur in the conflagration, and proceeded to instruct the factfinders in conformity with the so-called *Montella* rule. This rule provides that in cases where the sole basis of guilt is circumstantial evidence, a finding of guilt will be made only if the facts and circumstances of the case are consistent with the hypothesis that the defendant is guilty and inconsistent with any reasonable hypothesis that he is innocent. *State* v. *Montella,* 88 R. I. 469, 149 A.2d 919 (1959). This principle of the reasonable hypothesis of guilt being inconsistent with the reasonable hypothesis of innocence was first referred to in *State* v. *Di Noi,* 59 R. I. 348, 195 A. 497 (1937), and has been alluded to on numerous subsequent occasions. *State* v. *Murphy,* 113 R. I. 565, 323 A.2d 561 (1974); *State* v. *Olsen,* 113 R. I. 164, 319 A.2d 27 (1974); *State* v. *Rose,* 112 R. I. 402, 311 A.2d 281 (1973); *State* v. *Fortes,* 110 R. I. 406, 293 A.2d 506 (1972); *State* v. *Franklin,* 103 R. I. 715, 241 A.2d 219

(1968); *State* v. *Montella, supra; State* v. *Blood,* 68 R. I. 160, 26 A.2d 745 (1942).

Asselin now claims that if his conduct is measured in accordance with the standards of *Montella,* he should have been granted a new trial. He contends that his mere presence as a front seat passenger in Rogers' car is not enough to support a guilty finding. We think there is a little more to be said about his presence on Snow Street.

*Montella* does not refer to *any* hypothesis of innocence, but speaks, rather, of a reasonable hypothesis of innocence. When we look at the totality of the circumstances, we determine that Asselin and his companion Rogers were seated in an awaiting car. Wilbur was fleeing from the scene of a major fire of incendiary origin. Asselin was seated in the middle of the front seat. The car's engine was running. The vehicle's door was open. Asselin had left a space for Wilbur. The driver had the cap to a gasoline container in his pocket. Asselin carried a gun which, to be sure, shot blanks but which looked like a gun and when fired would sound just as frightening as a gun that fires projectiles. Wilbur showed up smelling of gasoline. The trial justice observed that Asselin could not be described as an "innocent bystander under any stretch of the imagination." Neither the jury nor the trial justice had to stretch their imaginations very far.

One who waits at or near the scene of the crime for the purpose of assisting the actual perpetrator in making his getaway is properly chargeable as a principal. *State* v. *Raniello,* 113 R. I. 71, 317 A.2d 440 (1974); *State* v. *Hart,* 106 R. I. 213, 258 A.2d 70 (1969). Merely because Asselin was not the driver, as were the defendants in *Raniello* and *Hart,* does not absolve him from guilt in this case. Here, his possession of the pistol gives rise to the most reasonable inference that he was "riding shotgun" and would if necessary use his pistol to cover Wilbur's rapid

retreat. The denial of Asselin's motion for a new trial was correct.

The defendants' appeals are denied and dismissed, and the cases are remitted to the Superior Court.

Mr. Justice Joslin did not participate.

*Julius C. Michaelson,* Attorney General, *Judith Romney Wegner,* Special Asst. Attorney General, for plaintiff.

*Joseph A. Capineri,* for defendant Raymond Wilbur; *Paul J. DiMaio,* for defendant Ronald J. Asselin.