February 20, 2018

**Supreme Court**

No. 2015-324-Appeal.
(04-2556-4)

In re Joseph C.                    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

In re Joseph C.                          :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.** The juvenile respondent, Joseph C., appeals from a May 22, 2015 judgment of the Family Court finding him delinquent for committing first-degree robbery as well as conspiracy to commit robbery. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After a close review of the record and careful consideration of the parties' arguments (both written and oral), we are satisfied that cause has not been shown and that this appeal may be decided at this time. For the reasons set forth in this opinion, we affirm the judgment of the Family Court.

**I**

**Facts and Travel**

On March 2, 2015, the Providence Police Department filed two delinquency petitions in the Family Court against respondent, alleging that he had committed two offenses that, if committed by an adult, would constitute the felony offenses of first-degree robbery, in violation of G.L. 1956 § 11-39-1, and conspiracy to commit robbery, in violation of G.L. 1956 § 11-1-6. A trial was held before a justice of the Family Court on May 21 and 22, 2015. We summarize below the salient aspects of what transpired at that trial.

- 1 -

## A

### The Testimony of Officer Juan Rodrigues

Officer Juan Rodrigues was the first witness to testify. He stated that, on March 1, 2015, he was working as a patrol officer in Providence and that, at approximately 7:00 p.m. on that date, he was dispatched to a reported armed robbery at a business that was both a gas station and a convenience store located at the corner of Manton Avenue and Sheridan Street in Providence (the Manton Avenue store). Officer Rodrigues testified that he and his partner responded first to the Manton Avenue store and then left to search for suspects along the bicycle path at the end of Sheridan Street, which path he entered on foot. He further testified that, while walking on the bicycle path, he was approached by a male, who was detained and searched. Officer Rodrigues further stated that he did not find any weapons on the suspect's person, but he said that he followed the tracks of the suspect's footprints in the snow (a blizzard then being in progress) to a point off the path, where the officer located a BB gun, gloves, and a ski mask approximately twenty feet from where the suspect was apprehended.

## B

### The Testimony of Officer Miguel Mena-Torres

Officer Miguel Mena-Torres testified next. He stated that, at approximately 7:00 p.m. on March 1, 2015, he was on duty as a patrol officer in Providence when he received a call about a robbery "at gun point;" he said that he responded to the scene of the reported robbery by driving to Glenbridge Avenue in Providence, near a bicycle path. He testified that, as he approached the bicycle path on foot, he saw two people running up a hill, one of whom would later identify

himself as D.M.[1] Officer Mena-Torres stated that, after briefly giving chase, he ordered D.M. to "get down on the ground" and that D.M. complied. The officer testified that he then searched D.M. and found in his possession a BB gun and $36.00 in one dollar bills.

## C

### The Testimony of Detective Robert Melaragno

Detective Robert Melaragno testified that, at around 7:15 p.m. on March 1, 2015, he "monitored a call" about a robbery at the Manton Avenue store. He stated that he responded to the store and spoke with Mamuad Bekra[2]—the store clerk on duty at the time of the reported robbery; the detective added that, while at the store, he watched a portion of the store's video surveillance footage.[3]

Detective Melaragno further testified that he returned to the police station from the Manton Avenue store and interviewed[4] respondent who, in the presence of his mother, confessed to committing two acts which, if committed by an adult, would constitute the offenses of first-degree robbery and conspiracy. The detective added that respondent admitted that he had called a friend, one K.J., between 6:00 and 7:00 p.m. on the evening in question and that, in the detective's words, respondent and K.J. "discussed committing the robbery." It was Det. Melaragno's further testimony that respondent said that he had gone to K.J.'s house and that, "when he arrived there[,] [D.M.] was also at [K.J.]'s house" and the three individuals "discussed

---

[1] Recognizing their possible status as minors, we will refer to the individuals allegedly involved in the robbery at the Manton Avenue store by their initials only.

[2] The record on appeal refers to the clerk on duty at the Manton Avenue store as both "Mohned Bekra" and "Mamuad Bekra;" we shall hereinafter refer to that person simply as Mr. Bekra.

[3] The trial justice did not admit the surveillance video as a full exhibit, sustaining respondent's objection on chain-of-custody grounds.

[4] The detective testified that he informed respondent of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and that respondent signed a form waiving those rights.

committing the robbery." Detective Melaragno testified that respondent explained that the two BB guns used during the robbery "came from" two different neighbors and that the three individuals who had met at K.J.'s house went by cab to the Manton Avenue store. He testified that respondent stated that, when the cab arrived at the store, D.M. and K.J. "entered the store before [respondent]" carrying the BB guns and that D.M. and K.J. "told the [store] clerk to get on the floor and open the register." Detective Melaragno added that respondent explained that he then "went around the counter" and "emptied the cash out of the register" and that the three individuals "fled from the store" and headed towards Merino Park, near the bicycle path. The detective stated that respondent admitted to dropping the BB gun, a pair of gloves, and a ski mask in the snow as the police approached. At trial, Det. Melaragno identified the BB gun, ski mask, and gloves which were recovered by Officer Rodrigues on the night of the robbery.

Detective Melaragno further stated that, during his interview of respondent, he showed him two photographs and that respondent identified the individuals depicted in those photographs as K.J. and D.M. and acknowledged that both of them had "accompanied him in the robbery." The recording of Det. Melaragno's interview with respondent was admitted into evidence as a full exhibit at trial.

**D**

**The Testimony of Nameer Jajou**

The next witness was Nameer Jajou, who stated that he was part-owner of the Manton Avenue store and that he had been working with Mr. Bekra on March 1, 2015 before leaving at approximately 7:20 or 7:30 p.m. Mr. Jajou testified that, shortly before he left the store, he observed that the cash register had between $400.00 and $500.00 in it. Mr. Jajou further testified that, approximately ten or fifteen minutes after leaving the store, he received a telephone call

from Mr. Bekra that caused him to return to the store; Mr. Jajou added that, when he arrived back at the store, the police were on the scene and that "the cash register [was] broken" and "[e]mpty." It was Mr. Jajou's testimony that the store had surveillance cameras, which recorded what occurred on March 1, 2015, and that a disk of the video surveillance footage was given to the police.

### E

### The Parties' Arguments

During her closing argument, counsel for respondent contended that the trial justice was confronted with "a corpus delecti [*sic*] problem" which required dismissal of the charges because "[t]here [wa]s not enough evidence to be submitted as to a robbery taking place or a conspiracy taking place."[5] Counsel argued that there was not sufficient evidence for the court to find beyond a reasonable doubt that the Manton Avenue store had been robbed, contending that the state had shown neither that Mr. Bekra had been "put in fear" nor that he had had "anything * * * taken away from him." Based on the purportedly insufficient evidence, counsel claimed that "[t]here [wa]s a serious corpus delecti [*sic*] issue," which required the trial justice to exclude respondent's confession from evidence. In response, the state argued that there was evidence establishing that a robbery had been committed, contending as follows:

> "[T]his robbery is fully [corroborated] both by the evidence on scene with both the two particular suspects, this Respondent as well as [D.M.], who were apprehended with evidence of the crime, as well as the evidence that a crime was committed at the gas

---

[5]     On appeal, the state suggests that respondent has waived the *corpus delicti* argument because he raised said argument for the first time during his closing argument. In our view, the better practice would have been to raise the *corpus delicti* argument at the time the confession was offered into evidence. However, we note that this Court has never indicated just when a *corpus delicti* objection must be made; accordingly, we shall not, in the context of this case, address the argument as to possible waiver.

station as told by the store owner who said between four hundred and five hundred dollars was taken."

The state further argued that the *corpus delicti* relative to the conspiracy charge had been established on the basis of an inference "from both the conduct and the actions of three individuals robbing a gas station" and also on the basis of respondent's confession at the police station.

**F**

**The Trial Justice's Decision**

After the closing arguments were concluded, the trial justice ruled from the bench, finding that the state had proven beyond a reasonable doubt that respondent had "commit[ed] a robbery" and had "conspired * * * to commit this crime of robbery." The trial justice reviewed the testimony of each of the state's witnesses, accepting their testimonies as true. She gave great weight to Det. Melaragno's testimony and said that his testimony had "tied all the pieces together." The trial justice further stated that she "couldn't disagree more" with respondent's argument that the *corpus delicti* as to the crimes charged had not been established. She cited respondent's "own admission[s]" as well as other circumstantial evidence as support for her conclusion that the crimes of first-degree robbery and conspiracy to commit robbery of the Manton Avenue store had been committed.[6] Accordingly, the trial justice found respondent delinquent on both charges. The respondent filed a timely notice of appeal.

---

[6] In the course of her decision, the trial justice stated that Mr. Bekra had "positively identified" D.M. and respondent as two of the individuals who robbed the Manton Avenue store. We note that the record does not reflect that Mr. Bekra positively identified anyone; consequently, the trial justice erred in so stating. However, we conclude that this error was harmless; there is more than enough additional evidence in the record to sustain the trial justice's finding as to respondent's guilt.

## II

## Standard of Review

It is well established that, "[i]n reviewing findings of fact by a trial justice in a delinquency adjudication, we apply a deferential standard of review." *In re J.S.*, 91 A.3d 845, 850 (R.I. 2014); *see also In re Richard A.*, 946 A.2d 204, 209 (R.I. 2008) (stating that, in view of our "substantial deference to the findings of a trial justice sitting without a jury, * * * [we] will not disturb those findings unless the trial justice has overlooked or misconceived material evidence or was otherwise clearly wrong."). On appeal, we review the record "to determine therefrom whether legally competent evidence exists therein to support the findings made by the Family Court trial justice." *In re Malik D.*, 730 A.2d 1070, 1072 (R.I. 1999).

## III

## Analysis

## A

## Issues Raised on Appeal

The only pertinent issue raised on appeal is whether the state has met its burden of establishing the *corpus delicti* of the crimes of robbery and conspiracy to commit robbery such that respondent's confession was properly admitted into evidence. If the state met its burden in that regard, then respondent's appeal is without merit and the trial justice's adjudication of delinquency, which was based in large part on respondent's confession, must be upheld.

The respondent contends that there was insufficient independent evidence that the charged crimes had actually occurred and that, therefore, the trial justice erred when she considered his confession in her decision. With respect to the robbery charge, respondent argues that the state failed to produce sufficient independent evidence to establish that "the 'gist' of the

robbery * * * had occurred." He bases his argument on the fact that Mr. Bekra did not testify at trial and on the fact that the video surveillance footage was excluded from evidence; he further argues that, while reasonable inferences are allowed in a *corpus delicti* analysis, the "discovery of an empty, broken cash register cannot, on its own, lead one to infer a robbery * * *." With respect to the conspiracy charge, respondent contends that, apart from his own confession, "there was no evidence that indicated that anyone knowingly engage[d] in a mutual plan to do a forbidden act." (Internal quotation marks omitted.) He argues that, other than his own confession, the record was completely devoid of "any independent evidence of an agreement, coordination, or planning by *anyone* on March first." (Emphasis in original.) Additionally, respondent challenges the trial justice's finding that Mr. Bekra "positively identified" respondent as one of the men who robbed him, arguing that there was no legally competent evidence in the record to support this finding and that, therefore, the trial justice misconceived material evidence.

**B**

### *Corpus Delicti*[7]

The operative principles relative to the *corpus delicti* rule are summarized with admirable clarity and cogency in our opinion in the case of *State v. Angell*, 122 R.I. 160, 405 A.2d 10 (1979). We explicitly expressed therein our agreement with "the principle that the corpus delicti of a crime must be established before extrajudicial confessions or admissions connecting the accused with the crime are admissible into evidence." *Id.* at 165, 405 A.2d at 13. We then

---

[7] A valuable historical perspective on the *corpus delicti* rule can be found in the following comprehensive article: Note, *Proof of the Corpus Delicti Aliunde the Defendant's Confession*, 103 U. Pa. L. Rev. 638 (1955). *See also* Thomas A. Mullen, *Rule Without Reason: Requiring Independent Proof of the Corpus Delicti as a Condition of Admitting an Extrajudicial Confession*, 27 U.S.F. L. Rev. 385 (1993). The *corpus delicti* rule is also thoroughly discussed in Wayne R. LaFave, *Substantive Criminal Law* § 1.4(b) (3d ed. 2018).

proceeded to elaborate as follows on just what the prosecution is required to establish for the confession of the accused to be admitted:

> "The prosecution is thus required to establish the corpus delicti through the production of sufficient direct or circumstantial evidence to establish that the crime charged was committed, regardless of who may have committed it. * * * We are of the opinion that *only prima facie proof* of corpus delicti must be established prior to the introduction of defendant's admissions [or] confessions." *Id.* (emphasis added).

And we have specifically "emphasized that the so-called corpus delicti need not be proved beyond a reasonable doubt before the admission can be admitted into evidence." *State v. Wilbur*, 115 R.I. 7, 14, 339 A.2d 730, 734 (1975). In *Wilbur*, we stated that there need only be "some corroborative evidence tending to prove the corpus delicti * * *." *Id.* at 13, 339 A.2d at 734.

Once a defendant's confession has been admitted into evidence, it "may be used to prove both the fact that the crime was committed and the defendant's agency therein." *State v. Boswell*, 73 R.I. 358, 363, 56 A.2d 196, 198 (1947); *see also State v. Jacobs*, 21 R.I. 259, 261, 43 A. 31, 32 (1899) ("The confession is evidence tending to prove both the fact that the crime was committed and the defendant's agency therein.").

### 1. Robbery

It is our view that there was sufficient legally competent evidence to support the trial justice's finding that there was a robbery of the Manton Avenue store. *See In re Richard A.*, 946 A.2d at 209. Accordingly, respondent's *corpus delicti* contention is unavailing.

As defined by our case law, robbery is "the felonious and forcible taking from the person of another of goods or money [of] any value by violence or [by] putting [the victim] in fear." *State v. Tully*, 110 A.3d 1181, 1193 (R.I. 2015) (alterations in original) (internal quotation marks omitted). The trial justice found that the state met its obligation relative to establishing that a

robbery had occurred; she noted that the state's witnesses provided ample evidence, independent of respondent's confession, that money was forcibly taken from the Manton Avenue store on March 1, 2015. She specifically highlighted the following evidence in her decision: (1) statements from Det. Melaragno, Officer Rodrigues, and Officer Mena-Torres that they each received a report of a robbery at the Manton Avenue store around 7:00 p.m. on that date; (2) statements from Officers Rodrigues and Mena-Torres that they apprehended two young men on the bicycle path near the Manton Avenue store and that they located firearms, a ski mask, and a pair of gloves on or near the young men at the time of their apprehensions; and (3) Mr. Jajou's testimony that, when he returned to the store in response to Mr. Bekra's phone call, the police were already on the scene, the cash register was "broken," and $400.00 to $500.00 was missing.

We conclude that the trial justice's factual findings constitute legally competent evidence upon which the trial justice could base her decision that the state established the *corpus delicti* of robbery. *Angell*, 122 R.I. at 165, 405 A.2d at 13. The record also reflects that several different officers in the Providence Police Department received reports of an "armed robbery" or a robbery "at gun point" at the Manton Avenue store on the evening of March 1, 2015. Accordingly, the trial justice did not err when she admitted respondent's confession into evidence and then relied on the confession in her decision adjudicating him delinquent for having committed first-degree robbery. *See Boswell*, 73 R.I. at 363, 56 A.2d at 198.

### 2. Conspiracy

It is further our view that the trial justice did not err in finding that there existed a conspiracy to commit a robbery of the Manton Avenue store and that respondent participated in that conspiracy. *See In re Richard A.*, 946 A.2d at 209. It is well settled that "the gist of a conspiracy is the unlawful combination of two or more persons to do an unlawful act or a lawful

act for an unlawful purpose with the offense being complete once the agreement is made." *State v. Berroa*, 6 A.3d 1095, 1103 (R.I. 2010) (internal quotation marks omitted). Moreover, "[b]ecause conspiracy rarely can be proven by direct evidence, illegal confederacy may be inferentially established by proof of the relation, conduct, circumstances and acts of the parties." *Id.* (internal quotation marks omitted).

The trial justice made the following findings of fact in this regard: (1) that the above-referenced police officers received reports of a robbery at the Manton Avenue store; (2) that both respondent and D.M. were apprehended on or near the bicycle path close to the Manton Avenue store within thirty minutes of the call reporting a robbery at that store; (3) that D.M. was carrying a BB gun and approximately $36.00 on his person at the time of his arrest; and (4) that respondent's footprints in the snow led to another BB gun, a pair of black gloves, and a black ski mask, all located approximately twenty feet from where respondent was arrested. These facts constitute circumstantial evidence of the "conduct, circumstances and acts" of respondent and D.M. on the night of the robbery and provide a basis for an inference of the existence of a conspiracy to commit a robbery of the Manton Avenue store. *Berroa*, 6 A.3d at 1103 (internal quotation marks omitted). As a result, we conclude that the state produced sufficient independent evidence of the *corpus delicti* of the crime of conspiracy to commit robbery. *Angell*, 122 R.I. at 165, 405 A.2d at 13. Accordingly, the trial justice did not err in admitting respondent's confession into evidence and, once admitted, the state was free to use the confession as evidence proving beyond a reasonable doubt that respondent "knowingly engage[d] in a mutual plan" to commit robbery. *State v. Gilman*, 110 R.I. 207, 218, 291 A.2d 425, 432 (1972).

- 11 -

## C

### Confession

We conclude that the state established the *corpus delicti* of both first-degree robbery and conspiracy to commit robbery and, as a result, the trial justice did not err in admitting respondent's confession. Once the confession was admitted, the trial justice was free to rely on that confession in her determination that respondent was guilty beyond a reasonable doubt. *Boswell*, 73 R.I. at 363, 56 A.2d at 198; *see also Jacobs*, 21 R.I. at 261, 43 A. at 32. Because the contents of respondent's confession, coupled with the other circumstantial evidence admitted at trial, proved beyond a reasonable doubt that respondent conspired to, and did in fact, perpetrate a robbery of the Manton Avenue store on March 1, 2015, it is our view that the trial justice did not err when she adjudicated respondent delinquent.

Accordingly, having closely scrutinized the record and bearing in mind the well-settled principles that govern our review in this context, we perceive no reason to disturb the ruling of the Family Court.

### IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Family Court. The record in this case may be remanded to that tribunal.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | In re Joseph C. |
| **Case Number** | No. 2015-324-Appeal. (04-2556-4) |
| **Date Opinion Filed** | February 20, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer From Lower Court** | Associate Justice Kathleen A.Voccola |
| **Attorney(s) on Appeal** | For Petitioner: <br><br> Jane M. McSoley <br> Department of Attorney General <br><br><br> For Respondent: <br><br> Angela M. Yingling <br> Office of the Public Defender <br><br> Mark Hirschboeck <br> Rule 9 Student Attorney |