237 A.2d 330.

## STATE *vs.* FRANCIS F. PEPPER, JR.

JANUARY 19, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. This is an indictment charging the defendant with murder. After a plea of not guilty, he was tried before a justice of the superior court sitting with a jury and convicted of murder in the first degree. The case is before us on the defendant's exceptions to the denial of his motion for a new trial, to certain evidentiary rulings and to a portion of the trial justice's instructions to the jury.

On March 14, 1964, defendant, during a discussion of their marital problems and after learning of his wife's infidelity, strangled her. They had been married for approximately three years, but had been separated prior to the killing. After the killing, defendant was arrested and signed a confession admitting that he took his wife's life. His confession was admitted into evidence and the question presented to the jury was not the actual commission of the offense, but whether the homicide was murder or voluntary manslaughter committed in the heat of passion. In his testimony defendant admitted the act, but claimed that he strangled his wife in the heat of passion. As defendant states the issue in his brief, the question presented to the jury was one of degree of homicide and not a question of absolute defense. The jury found defendant guilty of murder in the first degree.

After considering defendant's exceptions we conclude that certain evidentiary rulings to which defendant took exceptions are erroneous. Even if we assume without deciding that none of these erroneous rulings, when standing alone and considered individually, amount to reversible error, the question remains whether the totality of such errors does constitute prejudicial error. For the reasons which follow, we hold that the cumulative effect of the errors discussed under points I, II, III, and V of defendant's brief constitute prejudicial error requiring the granting of a new trial. This disposition obviates the necessity for any discussion of the other points raised.

## POINT I

During part of their married life defendant and his wife lived at the home of her stepfather and mother, Mr. and Mrs. George E. Hunt. During the presentation of the state's case the prosecutor called Mr. Hunt as a witness and asked him the following question:

> Q "I invite your attention to any particular incident that you might recall and ask you if you will relate it to us if it bears on the question of how the defendant Pepper treated his wife Doris."

The trial justice allowed the witness to answer the question over defendant's objection. The witness then proceeded to relate an occasion involving an argument between defendant and his wife during which he put his hand around her throat and held her down on the bed. The witness testified that defendant got her in the room, closed the door and would not let him in and that when he went to the phone and dialed the police department, defendant came running out of the room, ripped the phone off the wall, broke a couple of cups, tipped over a chair, ripped his shirt, slapped him in the face and left.

The defendant's contentions under point I are based on his exception to the trial justice's ruling denying defendant's motion to strike the answer. He points out that the question referred to defendant's treatment of his wife but his answer includes defendant's treatment of the witness, including an assault and battery on him. He argues that the assault and battery upon the witness constituted a separate and distinct act which had no relevancy, materiality or bearing upon the case being tried. He relies on *State* v. *Harris*, 89 R. I. 202, 152 A.2d 106.

The state, on the other hand, contends that since the question before the jury concerned malice and premeditation, past history of similar acts with relation to his treatment of his wife were material on the question of defendant's criminal intent. With respect to the witness's testi-

mony that when he tried to interfere defendant assaulted and battered him, the state argues that such testimony was admissible as part of the res gestae. The state relies on *State* v. *Colangelo,* 55 R. I. 170, 179 Atl. 147.

In *Colangelo, supra,* the court said at page 173, 179 Atl. at 149:

> "* * * While it is the rule that in the trial of a criminal offense evidence of other and distinct criminal acts is generally prejudicial and inadmissible, yet it is generally conceded that evidence of other acts, representations and conduct at different times, even of a criminal nature, may be received when they are interwoven with the offense for which the defendant is being tried, or directly support a finding of guilty knowledge in the perpetration of that offense. Any circumstance that is incidental to or connected with the offense under investigation in such a way that it tends to establish guilty knowledge, intent, motive, design, plan, scheme, system, or the like, is proper evidence according to the overwhelming weight of authority."

And in *Harris, supra,* the court stated at page 210, 152 A.2d at 111:

> "* * * It is a general rule that evidence of prior criminal conduct is inadmissible. * * * An exception to this rule is that such conduct may be shown where it tends to establish criminal intent as to the offense in question. * * *"

With these rules to guide us, and keeping in mind that the question before the jury was not whether defendant had taken his wife's life, but rather whether he had done so with premeditation and malice or in the heat of passion, the question remains—did the trial justice commit prejudicial error in refusing to strike the witness's testimony concerning defendant's prior treatment of his wife and his testimony that defendant had committed an assault and battery on the witness when he tried to interfere in the argument between defendant and his wife? The answer to this ques-

tion depends on whether the challenged evidence is relevant or material to the underlying question of whether defendant acted with malice and premeditation rather than in the heat of passion.

One of the grounds on which defendant bases the instant exception is the failure of the state to establish when the alleged incident took place. The trial justice ruled that in view of the fact that the parties had been married a relatively short time (within three years) before the wife's death, the incident in question was not too remote in time. We agree insofar as the evidence related to defendant's conduct toward his wife. The evidence relating to such conduct was relevant to the issue of defendant's general feeling towards her and was competent evidence from which the jury could reasonably have drawn inferences with respect to defendant's state of mind towards her on the day of her death. We find no error in the trial justice's refusal to strike this portion of the witness's answer.

However, we recognize that his refusal to strike that portion of the witness's testimony relating to the assault and battery on the witness poses a different problem. This testimony has no relevancy to the question of whether defendant committed murder in the first degree or voluntary manslaughter in the heat of passion. For this reason we believe that there is error in the trial justice's ruling refusing to strike this portion of the witness's testimony with instructions to the jury to disregard such evidence. The fact that the assault and battery occurred during defendant's argument with his wife is immaterial.

## POINT II

Under point II defendant has briefed and argued an exception to the ruling of the trial justice overruling his objection to the introduction of certain clothing worn by defendant's wife at the time of her death. The clothing in question included a coat, a skirt, a sweater, stockings, slip-

pers and undergarments, but not the kerchief with which defendant allegedly strangled his wife. The prosecutor introduced this clothing, over defendant's objection, while questioning Dr. Harold Beddoe, who was then chief medical examiner for the state. He testified that when he examined the decedent's body, the garments she was wearing were clean and unwrinkled. It appears from the transcript that at the time of the trial the clothes were not in the same condition that they were in when the witness examined the body; they had become sordid, wrinkled, odorous, and, in one instance, slightly moldy.

The defendant contends, and we believe correctly so, that the clothing in question had no relevancy on the question whether defendant had committed murder or voluntary manslaughter in strangling his wife. There is no evidence that the clothing in question was disheveled or damaged as a result of defendant's act. The only evidence is that when the medical examiner first viewed the body, the clothing was clean and unwrinkled. We do not believe that the introduction of this clothing could shed any light upon the question whether defendant's act was done with malice aforethought or in the heat of passion. The clothing, being without any possible relevance to defendant's degree of guilt, could have been offered only for the purpose of prejudicing the jury against defendant. It could reasonably have no other purpose. In the circumstances we conclude that it was error to admit the clothing in question into evidence.

### Point III

During the presentation of the state's case the prosecutor called as a witness Mr. Rene Cartier, the owner of the house at 83 Brook street, in which defendant killed his wife. Over defendant's objection the trial justice permitted the witness to testify that shortly after the homicide defendant assaulted and attempted to rob him in an empty tenement in the

house at 83 Brook street. The defendant's exception to the trial justice's denial of his motion to strike this testimony is the basis of defendant's contention that the trial justice's ruling constituted prejudicial error.

The defendant contends that since Mr. Cartier's testimony related to events which occurred after the killing and inasmuch as the alleged assault and attempted robbery were not related to the offense for which he was being tried, it was error to admit this testimony. There is merit in defendant's position. Indeed the trial justice, before allowing the witness to proceed with his testimony on this subject, instructed on the law as follows:

> "* * * ordinarily it is improper to allow evidence directly or indirectly of a crime wholly independent of that with which a defendant stands charged.

> "* * * but my ruling is that this episode is not wholly independent of the crime for the simple reason of the nearness in time and the location where Mr. Cartier and the defendant Pepper were standing according to the testimony of the witness Cartier.

> "* * *

> "Because of the proximity of time between the incident where the defendant returned to the tenement and where the body was found was of such short duration and because of the location being the same, it appears to the Court that activities of the defendant and where he was seen on that particular afternoon are relevant to the crime for which he stands indicted and I explain this to you with the ernest [sic] urging on my part that it's only admissible for the purpose of showing where the defendant was and what he may have been doing without the suggestion of the fact that what he may have been doing was another crime for which you must disregard that evidence in the pending case."

The prosecutor states in his brief that the testimony of Mr. Cartier was not introduced to show that defendant had committed another felony, but rather to show his state of mind during and immediately following the homicide. He

admits that defendant's activities after the homicide do not bear upon the guilt or innocence of defendant for the killing, but he argues that they are relevant to the issue of degree of guilt. We do not agree. We fail to perceive any relevancy between defendant's activities after the homicide and his state of mind at the time he strangled his wife. It may very well be that he was running away from the homicide, but it does not follow that this had any probative value on the question of degree of guilt; it is not relevant to the question of whether he committed murder with malice aforethought or voluntary manslaughter in the heat of passion. We believe that the admission of this testimony and the refusal to strike the same was error which was not cured by the trial justice's instructions.

## Point V

During the state's cross-examination of defendant, the trial justice overruled defendant's exceptions to the following questions.

Q "You did, in fact, engage in boxing contests in Woonsocket long before you married Doris, did you not?"

Q "How many prize fights did you engage in in your lifetime up to today?"

The state claims that the purpose of this testimony was to show that defendant was capable of thinking clearly in times of stress. The defendant contends that evidence of boxing contests in which he engaged prior to his marriage was irrelevant to the issues of this case and had no bearing at all upon the guilt or innocence of defendant or upon the degree of guilt. We agree.

## Point VIII

Under this point defendant has briefed and argued his exception to the denial of his motion for a new trial. However, on the view we take we do not reach this exception.

The issue before the jury, as we have stated previously, was not the question of defendant's guilt or innocence of the homicide, but rather the question of whether he was guilty of murder or of voluntary manslaughter.

Even if we assume that none of the rulings discussed under points I, II, III and V, standing alone, constituted prejudicial error, we are of the opinion that there is a reasonable probability that the totality of the errors complained of influenced the verdict, thereby depriving defendant of the fair trial to which he was entitled under the due process clause of the fourteenth amendment to the federal constitution and the provisions of art. I, sec. 10, of our state constitution. See *Marley* v. *Providence Journal Co.*, 86 R. I. 229, 237-38, 134 A.2d 180, 184. Compare *Fahy* v. *Connecticut*, 375 U. S. 85, 86, 84 S. Ct. 229, 230, and *Chapman* v. *California*, 386 U. S. 18, 87 S. Ct. 824. We believe that the cumulative effect of the improper evidence is of such a character that the defendant was prejudiced thereby to such an extent that only a new trial can cure it.

Although the defendant's bill of exceptions consists of twenty-three exceptions, we have considered only those which he has briefed and argued. Those neither briefed nor argued are deemed to have been waived.

The exceptions which the defendant has briefed and argued under points I, II, III, and V taken in the effect of their cumulative entirety, are sustained, and the case is remitted to the superior court for a new trial.

*Herbert F. DeSimone*, Attorney General, *Donald P. Ryan*, Assistant Attorney General, for plaintiff.

*Eugene F. Toro*, Office of Public Defender, for defendant.