STATE
v.
Thomas F. KILLAY.
No. 79-244-C.A.
Supreme Court of Rhode Island.
May 29, 1981.

Dennis J. Roberts II, Atty. Gen., Jeffrey B. Pine, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Marvin E. Clemons, Asst. Public Defender, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on an appeal by the defendant, Thomas F. Killay, from his conviction for the crime of rape. Following a jury trial in the Superior Court, a judgment of conviction was entered and the defendant was sentenced to a term of imprisonment at the Adult Correctional Institutions (ACI). The defendant appeals, arguing that the trial justice erred in admitting into evidence an incriminating statement made by the defendant while in police custody. We affirm. The pertinent facts are as follows.

On the evening of Saturday, January 21, 1978, fifteen-year-old Lyn M. had arranged an appointment to babysit for some friends in West Warwick, Rhode Island. Upon arriving at the family's apartment, she learned that the plans had changed and that her services were not required. Thereafter, she decided to walk along West Warwick Avenue to a house at which her sister was visiting a friend.

At approximately 8 p. m., as Lyn was walking along the road, defendant stopped his car and asked the girl if she wanted a ride. She got into the car; and after the pair rode for a few hundred yards, defendant pulled over to the side of the road. Although it is undisputed that at this point defendant and the girl engaged in sexual intercourse, their accounts of the circumstances vary considerably.

At trial, Lyn claimed that defendant grabbed her in the area of the chest, began choking her, and told her to lie down on the seat. Lyn stated that she screamed and told defendant to leave her alone but that he threatened to kill her if she did not cooperate. The defendant then forced her to submit to sexual intercourse with him.

The defendant's account of the incident differed greatly. Although admitting that he had sexual relations with Lyn, defendant denied the use of any force or threats. He testified that he had never met the girl before this occasion; nevertheless, when he stopped the car, he began kissing her, and the two subsequently engaged in sexual relations in his automobile.

Lyn testified that following this incident defendant left her in a parking lot near a bar in West Warwick. She stated that as she left the vehicle, she took mental note of its license-plate number. She then ran into the bar, where she called the police and contacted some friends who accompanied her to the police station.

Upon hearing Lyn's story, Sergeant Gerald Gorman of the West Warwick police sent her to Women and Infants Hospital in Providence. Doctor Carine Klein, a resident in obstetrics and gynecology at Women and Infants, testified that an examina-

tion revealed bruises about the neck and left breast and confirmed that sexual intercourse had occurred within the previous forty-eight hours.

The automobile registration number that Lyn had reported led the West Warwick police to an automobile owned by defendant's mother-in-law. As a result of further investigation, a warrant was issued authorizing defendant's arrest. On January 27, 1978, defendant, at that time a resident of Warwick, was arrested by the Warwick police.

Sergeant Gorman of the West Warwick police department went to Warwick on the evening of the twenty-seventh to take custody of defendant. Gorman brought defendant to the West Warwick police station, where he eventually made incriminating statements to two West Warwick detectives. The voluntariness of these statements was questioned by defendant at midtrial.[1] In order to determine whether defendant had been properly apprised of his rights and whether the statements were voluntary, the trial justice conducted a hearing in the absence of the jury.

Sergeant Gorman testified that he informed defendant of the charges against him, advised him of his rights, and suggested that he contact an attorney. Although defendant did not then execute a waiver, he did sign the upper portion of a rights-waiver form, indicating that he had been advised of his rights. In addition, he told the officer that he "wanted to talk to somebody about what happened." Refusing to take a statement from defendant, Sergeant Gorman again advised defendant to call an attorney and opened the telephone book to the section entitled "lawyers." When defendant indicated that he would not know whom to call, Sergeant Gorman suggested that if he wished to wait, counsel would be appointed for him at his arraignment. Thereafter, Sergeant Gorman locked defendant in a cell for the night.

The following morning, at approximately 8 a. m., Detectives Joseph Rossi and Norman Frenette removed defendant to the department processing room for fingerprinting and photography. Both detectives testified that defendant wanted to talk to someone "about what happened last week." After learning that defendant had previously been advised of his rights, Detective Rossi produced a rights-waiver form. The defendant signed this form at the bottom, indicating a desire to waive his rights. When asked if he understood his rights, defendant replied, "Yes, but you know everything already anyway."

The detectives testified that defendant declined to write a statement, so the officers took notes while defendant spoke. The statement was then typed, and the officers presented it to defendant, who read and signed it. The statement, which was admitted into evidence, read in part:

"I drove down route 117 in West Warwick, I saw the girl walking, I pulled up and just asked her if she wanted a ride, she said yes and got in, then I drove down the road, I don't remember what she was saying, I pulled over to the side of the road, and forceable [sic] raped her, it only took about 10 minutes, I drove her up the road a little bit and dropped her off, from there I went right home."

When he testified at the suppression hearing, defendant's account of these events differed in two major respects. First, he stated that as he signed the rights-waiver form, the two officers assured him that attorney Paul Kelley of the public defender's office would be coming to the police station to assist him. The defendant's father testified that when visiting his son at the police station, Mr. Kelley was pointed out to him, but that he never saw his son consulting with Kelley. Second, although admitting that he made a statement and that the signature on the alleged statement "looked like" his, defendant denied ever using the words "forcibly raped."

---

**1.** Although recognizing that under *State v. Maloney*, 111 R.I. 133, 300 A.2d 259 (1973), a suppression motion must ordinarily be made prior to trial, the trial justice nevertheless entertained the motion and considered it on its merits.

After hearing the testimony of defendant, the three police officers, and defendant's father, the trial justice decided to admit the confession into evidence. The defendant challenges this decision, raising two bases for appeal. The defendant argues first that the trial justice failed to make a clear and unequivocal finding on the question of whether defendant had requested counsel. The defendant also challenges the finding of the trial justice concerning waiver. The defendant contends that he did not knowingly, intelligently and voluntarily waive his Fifth Amendment rights and that it was therefore error to admit his statement into evidence.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court of the United States established strict guidelines to which arresting officers must adhere before interrogating an arrestee. Designed to protect an individual's Fifth Amendment rights, the *Miranda* safeguards require arresting authorities to warn the individual

> "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Id.* at 479, 86 S.Ct. at 1630, 16 L.Ed.2d at 726.

The Court in *Miranda* noted specifically that the police must scrupulously honor these rights and terminate any interrogation if the arrestee expresses a desire to exercise either the right to remain silent or the presence of an attorney. Failure to comply with these procedures prior to interrogation results in the *per se* exclusion of

evidence obtained as a result of that interrogation. *Id.* at 479, 86 S.Ct. at 1630, 16 L.Ed.2d at 726.

▇ In arguing that the trial justice failed to determine specifically whether defendant invoked his right to counsel, defendant is challenging the factfinding process. Our courts in Rhode Island have long applied strict procedures in order to safeguard the accuracy of such factual determinations. When the voluntariness of an extrajudicial statement or confession is challenged, the trial justice must conduct an evidentiary hearing outside the presence of the jury in order to determine admissibility under constitutional standards. The statement or confession may be admitted only if the trial justice is persuaded by clear and convincing evidence that it was not illegally obtained. *State v. Benton*, R.I., 413 A.2d 104, 109 (1980); *State v. Espinosa*, 109 R.I. 221, 228–29, 283 A.2d 465, 468–69 (1971). If the statement is admitted into evidence, the question of voluntariness is again submitted to the jury.[2]

Our practice unquestionably provides a criminal defendant with the constitutionally required "reliable and clear-cut determination that the confession was in fact voluntarily rendered." *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 626–27, 30 L.Ed.2d 618, 627 (1972).[3] On appeal, if we are satisfied that the trial justice adequately and correctly applied the procedures, we examine the record in the light most favorable to the prevailing party and reverse only if we find that the decision of the trial justice was clearly erroneous. *State v. Leavitt*, 103 R.I. 273, 290, 237 A.2d 309, 318,

---

**2.** Commonly referred to as the "humane practice," this procedure has been applied in our courts since *State v. Mariano*, 37 R.I. 168, 186–87, 91 A. 21, 29 (1914); *see, e. g., State v. Espinosa*, 109 R.I. 221, 228, 283 A.2d 465, 468–69 (1971); *State v. Boswell*, 73 R.I. 358, 362, 56 A.2d 196, 198 (1947). *See generally Commonwealth v. Preece*, 140 Mass. 276, 277, 5 N.E. 494, 495 (1885).

**3.** *See generally Jackson v. Denno*, 378 U.S. 368, 391, 84 S.Ct. 1774, 1788, 12 L.Ed.2d 908, 924 (1964). The United States Supreme Court in

*Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972), although requiring a determination of voluntariness, established procedures that are less strict then those applied in Rhode Island. The *Lego* rule requires proof of voluntariness only by a preponderance of the evidence, and does not require a second determination by the jury. Of course, as the Court in *Lego* indicated, states are free to apply procedures that more stringently insulate the rights of defendants. *Id.* at 489, 92 S.Ct. at 627, 30 L.Ed.2d at 627.

*cert. denied*, 393 U.S. 881, 89 S.Ct. 185, 21 L.Ed.2d 155 (1968).[4]

■ The defendant argues that the trial justice failed to find with specificity whether defendant requested counsel. We disagree. After conducting a hearing in the absence of the jury, the trial justice concluded that the factual determination of whether defendant had specifically requested an attorney rested upon findings of credibility as between defendant and the police. The trial justice's reference to defendant's memory as "convenient" clearly indicates a rejection of defendant's credibility. Furthermore, the judge specifically rejected defendant's contention that the police had assured him that an attorney was on his way. It is clear from our reading of the trial justice's decision that he disbelieved defendant's version of the facts. It is also clear that the trial justice accepted the account given by the police officers that defendant had asked to speak with "someone." Neither defendant's argument nor our careful and independent review of the hearing transcript leaves us with "the definite and firm conviction" that these findings were clearly erroneous. *See United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948). Indeed, the record is replete with evidence competent to support the trial justice's findings.

■ We are equally unpersuaded that defendant's expression of a desire to speak to "someone" in any way acted to invoke his right to the presence of counsel. The rigid *per se* rule of *Miranda*, requiring termination of interrogation upon invocation of the right to counsel, is "based on the unique role the lawyer plays in the adversary system of criminal justice in this country." *Fare v. Michael C.*, 442 U.S. 707, 719, 99 S.Ct. 2560, 2569, 61 L.Ed.2d 197, 209 (1979) (request of juvenile to speak to probation counselor did not invoke right to counsel). An arrestee must express, not a haphazard desire to speak with another unspecified individual, but a specific request to consult with an attorney. *See State v. Benton*, R.I., 413 A.2d 104, 110 (1980) (adult suspect's request to speak with aunt or mother does not invoke right to counsel); *State v. Franklin*, 103 R.I. 715, 722–23, 241 A.2d 219, 224–25 (1968) (request to speak with wife insufficient to invoke right to counsel). On the facts of this case, as determined by the trial justice, we see nothing to persuade us that the request to speak with "someone" could in any way be construed as an invocation of the right to counsel.

■ We now turn to defendant's contention that the trial justice erred in concluding that defendant knowingly and voluntarily waived his Fifth Amendment rights. Waiver occurs when an individual intentionally abandons or relinquishes a known right or privilege. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). The Supreme Court in *Miranda* noted that a heavy burden rests upon the prosecution in demonstrating waiver. *Miranda v. Arizona*, 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724. Although an express, written waiver may be persuasive evidence, the trial justice must nevertheless examine the circumstances and facts in their totality to determine whether waiver has in fact occurred. *State v. Amado*, R.I., 424 A.2d 1057, 1061 (1981); *see North Carolina v. Butler*, 441 U.S. 369, 375–76, 99 S.Ct. 1755, 1758–59, 60 L.Ed.2d

---

**4.** The Supreme Court has defined this standard in the following way:

> "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948).

This standard, which we have applied consistently since *State v. Leavitt*, 103 R.I. 273, 237 A.2d 309, *cert. denied*, 393 U.S. 881, 89 S.Ct. 185, 21 L.Ed.2d 155 (1968), is also applied in several of the federal circuits. *E. g., United States v. Smith*, 608 F.2d 1011, 1013 (4th Cir. 1979); *United States v. Hernandez*, 574 F.2d 1362, 1370 n.17 (5th Cir. 1978); *United States v. DiGilio*, 538 F.2d 972, 986 (3d Cir. 1976), *cert. denied sub nom.* 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977).

286, 293–94 (1979) (totality of circumstances established waiver even in face of refusal by accused to execute a written waiver form).

We have already concluded that the trial justice adequately performed the initial factfinding procedures by conducting a hearing in the absence of the jury. Our review of the record reveals evidence that defendant expressed a desire to talk about what happened and signed two separate forms.[5] On the night of his arrest, defendant signed a form indicating that he had been informed of his rights. The following day, prior to making the statement, defendant signed a second form expressing a desire to waive those rights.

The trial justice, after hearing the testimony of the defendant and the two officers, concluded that this waiver was intelligent and voluntary. Because nothing on this record persuades us that this finding is clearly erroneous, we conclude that it was not error to deny the defendant's motion to suppress.

The defendant's appeal is denied and dismissed, the judgment of conviction appealed from is affirmed, and the papers in the case may be remitted to the Superior Court.

SHEA, J., did not participate.

---

5. It is clear from this record that defendant's unsolicited statement to the detectives that he wanted to talk initiated the discussion and led to his incriminating admissions, unlike the situation in *Edwards v. Arizona*, —— U.S. ——, ——, 101 S.Ct. 1880, 1885–1886, 68 L.Ed.2d —— (1981).