**STATE**

v.

**Bon L. BIBEE.**

**No. 87–438–C.A.**

Supreme Court of Rhode Island.

May 24, 1989.

James E. O'Neil, Atty. Gen., Jeffrey J. Greer, Asst. Atty. Gen., for plaintiff.

Catherine A. Gibran, Barbara Hurst, Asst. Public Defenders, for defendant.

OPINION

FAY, Chief Justice.

This case comes before us on appeal by the defendant, Bon L. Bibee (Bibee), from a judgment entered in the Superior Court convicting him of second-degree murder in the death of Anthony Sano (Sano). The defendant contends that improper jury instructions, the admission of a prior threat by the defendant, and the state's violation of Rule 16 of the Superior Court Rules of Criminal Procedure constitute reversible error. We reject the defendant's appeal and affirm the conviction. The facts relevant to our review are as follows.

On February 8, 1986, a neighbor of Sano found the deceased lying in a pool of dried blood on Sano's kitchen floor. A subsequent autopsy revealed that the cause of death was a gunshot wound to the chest and that the manner of death was homicide. It was the opinion of Kristin Sweeny, M.D., who at the time of the autopsy was the associate medical examiner for the state, that the death had occurred between twenty-four and seventy-two hours before the body was found.

On the basis of information supplied from a number of individuals, the police apprehended defendant on February 11, 1986, as a suspect in Sano's murder. After his arrest defendant made a lengthy confession. Included in this statement was defendant's admission that he shot Sano on February 5, 1986, after going to Sano's home to confront him about a long-standing feud. The feud had developed when defendant overheard Sano's live-in girlfriend, Betty Hammond (Hammond), tell his wife that Sano had molested her daughter. After hearing these accusations, defendant visited Hammond and said that she should believe her daughter's story because he had also been molested by Sano. Later that night, when Sano learned what defendant had said, he called defendant and an altercation ensued.

The defendant told the police during his confession that he avoided Sano for over a year after this argument but constantly worried about a confrontation. He admitted that on the night of the shooting he had been drinking heavily when he decided to drive to Sano's house and resolve the situation. He also said that after driving halfway there, he returned to get his shotgun. The defendant then proceeded to Sano's residence and fatally shot him.

The defendant raises a number of issues in this appeal. The defendant maintains that the trial justice twice committed reversible error during the course of his instructions to the jury. First, defendant contends that the trial justice improperly enumerated the elements necessary to sustain a murder charge. Second, defendant claims that the trial justice committed reversible error by erroneously instructing the jury on the mitigating effect of intoxication.

We note at the outset of our discussion that the state raises the question of whether the jury-instruction issue is preserved for appeal. *See, e.g., State v. Burke,* 522 A.2d 725, 731 (R.I.1987) ("[w]e have consistently held in criminal cases that issues will not be addressed when raised for the first time on appeal"). The circumstances are such that we find the issue is preserved.

It has long been the law in this jurisdiction that this court will view jury charges in their entirety to determine whether the trial justice delineated the legal principles to comport sufficiently with due process requirements. *State v. Andrade,* 544 A.2d 1140, 1143 (R.I.1988); *State v. Cipriano,* 430 A.2d 1258, 1262 (R.I.1981) (citing *Cupp*

*v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). We shall not allow the extraction of one sentence in order to show an incorrect statement of law. Rather our review will consist of the entire charge. *State v. Hadrick,* 523 A.2d 441, 444 (R.I. 1987); *State v. Lambert,* 463 A.2d 1333, 1338 (R.I.1983).

The trial justice instructed the jury on the definition of murder. He differentiated between first-degree murder, second-degree murder, and manslaughter and discussed the significance of malice aforethought. Thereafter he instructed the jury that voluntary intoxication would reduce murder to manslaughter.[1] He then defined intoxication and reiterated that the controlling difference between murder and manslaughter is malice aforethought. He again differentiated between first- and second-degree murder before concluding his charge.[2] Specifically defendant contends that the three successive negatives in the first challenged portion and the use of the affirmative "able" instead of the negative "unable" constitutes an improper instruction amounting to reversible error.

We believe that the first challenged portion of the trial justice's charge cannot be isolated from the ensuing paragraphs. After instructing the jury regarding the mitigating effect of intoxication in terms of a murder charge, the trial justice continued his remarks by stating:

"Our Supreme Court has addressed the issue of what do we mean by intoxication? Intoxication that is sufficient to negate the ability to form a specific intent in an earlier case, the Supreme Court said evidence of intoxication may

---

1. The trial justice instructed:
   "Also, ladies and gentlemen, voluntary intoxication does not excuse the commission of a crime. If you find that the defendant unlawfully killed Anthony Sano and you find that the State has not proved that he was capable of forming an intent by reason of intoxication, you may not find that he is not guilty of murder and you will find, if you find, that it was an unlawful killing by this defendant that he's guilty of Manslaughter."

2. Further in his charge to the jury the trial justice stated:

   "So in this case, the Jury should first consider whether or not the State has proved beyond a reasonable doubt that the defendant killed Anthony Sano under such circumstances that his crime is Murder in the First Degree. Again, the elements that the State must prove beyond all doubt are (1) that the defendant killed Mr. Sano[,] (2) that he was not so intoxicated as to be able to form a specific intent to kill[,] (3) that the defendant killed Anthony Sano with malice aforethought and (4) that the intent to kill existed for more then a mere moment."

be offered to negate the specific intent charged, but only when the drunkedness [*sic*] of such a degree to completely paralyze the will of the defendant and take from him the power to withstand evil impulses and to render his mind incapable of forming any sane design.

"I have instructed you that the controlling distinction between Murder and Manslaughter is the presence or absence of malice aforethought. If in an unlawful killing malice aforethought is present, the crime is Murder. If in an unlawful killing malice aforethought is absent, the crime is Manslaughter."

Although the use of the negatives may have muddied the meaning that the trial justice sought to convey·by the challenged sentence, the ensuing instruction cured any confusion created by the preceding sentences. The trial justice distinguished murder from manslaughter numerous times throughout the charge to the jury. This distinction was clearly sufficient to inform an ordinarily intelligent juror of the controlling principles. *See, e.g., Cipriano,* 430 A.2d at 1262 ("[i]n passing on the sufficiency of a trial justice's instruction, we determine how a jury composed of ordinarily intelligent persons listening to that instruction at the close of a trial would have appreciated the instructions as a whole").

Additionally, the use of the word "able" in the second challenged portion of the instruction is not so unclear as defendant maintains and actually was requested by defendant.[3] We are of the opinion that in the context presented, "able" and "unable" are actually interchangeable. This portion of the charge is a further refinement of the elements necessary for a conviction of first-degree murder. The numerous explanations of the distinctions between first– and second-degree murder and manslaughter in light of the whole charge compel our determination. We find that the sheer number of times the distinction was drawn sufficiently clarified the instruction to overcome any failing within an individual sentence of the charge. Viewing the instruc-

tion as a whole, we hold that the trial justice sufficiently elucidated the relevant legal principles to justify our affirmance.

■ Next defendant maintains that the trial justice improperly admitted evidence of a threat made one and one-half years before the homicide. Betty Hammond testified at trial that more than one and one-half years prior to the shooting, defendant and his brother-in-law stopped by her house looking for Sano. Over defense counsel's objection, Hammond stated that defendant told her that he had intended to bring a gun that night but that his brother-in-law had taken the gun from him. The trial justice denied defendant's motion to pass based upon the failure of the state to provide this information during discovery, but he instructed the jury to disregard the evidence. Hammond continued, testifying that later that night she initiated a phone call from Sano's residence to Bibee. During this conversation, Sano denied the accusations leveled by Bibee, and a verbal fight ensued between defendant and Sano. As Bibee and Sano argued, Hammond listened on a telephone extension and heard defendant say that "[h]e had a bullet with his [Sano's] name on it." The defendant maintains on appeal that this prior threat was too remote in time to have any probative value and therefore was improperly admitted. We do not agree.

We have clearly stated that questions of relevancy of evidence, including whether the probative value of proffered testimony is outweighed by the danger of undue prejudice, are left to the sound discretion of the trial justice. *State v. Gordon,* 508 A.2d 1339, 1347 (R.I.1986). We shall not disturb a trial court's determination absent a showing of prejudicial abuse of that discretion. *Id.; State v. Champa,* 494 A.2d 102, 106 (R.I.1985); *State v. Kaner,* 463 A.2d 1348, 1351 (R.I.1983).

We have previously stated:

"Evidence of a prior threat made by a defendant is relevant to the question of

---

**3.** The defendant's jury-charge request No. 30 read in pertinent part: "In other words, the State is required to prove beyond a reasonable

doubt that the defendant was not so intoxicated as to be able to harbor the specific intent to murder."

whether the defendant 'acted with malice or premeditation, or whether he had a motive to commit the crime.' * * * Although motive is not an essential element of murder, '[e]vidence of motive is often probative and relevant, and therefore admissible in proper circumstances. * * * [S]uch evidence must not lead the jury to speculate and must not improperly open up collateral matters.' " *State v. Pule,* 453 A.2d 1095, 1098 (R.I.1982). In discussing this evidence, we upheld the admissibility of a conditional threat made at least two and one-half months prior to the killing. *Id.* at 1099. In *State v. Pepper,* 103 R.I. 310, 237 A.2d 330 (1968), we allowed the admission of testimony concerning an argument between a defendant and his wife sometime within three years prior to the killing. We wrote, "the evidence relating to such conduct was relevant to the issue of defendant's general feeling towards [deceased] and was competent evidence from which the jury could reasonably have drawn inferences with respect to defendant's state of mind towards [deceased] on the day of her death." *Id.* at 314, 237 A.2d at 333.

In the instant case we find that the threat was relevant and not too remote in time to deny its admissibility. The defendant had no further contact with Sano following the threat until the night of the homicide. The two had previously been quite friendly, and this particular incident resulted in their estrangement. During the one-and-one-half-year interval between the threat and its enactment, no reconciliation occurred to alleviate the tension that had accumulated. Clearly the relevance of the threat is disclosed from these facts. We therefore find that the trial justice did not abuse his discretion in determining that the probative value of the threat outweighed any danger of prejudice.

■ The final point for our consideration is defendant's contention that the state violated Rule 16 by failing to disclose the substance of a prospective witness's testimony. The defendant maintains that Hammond's statement regarding defendant's possession of a gun prior to his arrival at her apartment on the night he threatened Sano was inflammatory evidence that justified granting defendant's motion to pass.

Rule 16 provides sanctions for a party's failure to provide discovery materials to an opposing party. Since the trial justice is in the best position to gauge any harm resulting from noncompliance with Rule 16, we shall not overturn a ruling absent a clear abuse of discretion. *See State v. Concannon,* 457 A.2d 1350, 1353 (R.I.1983); *State v. Coelho,* 454 A.2d 241, 244–45 (R.I.1982). We have delineated the four factors a trial justice should assess when considering a remedy for a Rule 16 violation: " '(1) the reason for nondisclosure, (2) the extent of prejudice to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and (4) any other relevant factors.' " *State v. Boucher,* 542 A.2d 236, 241 (R.I.1988).

The record indicates that the state's failure to provide the materials was inadvertent. When faced with such a situation, the second element of the test, prejudice to the opposing party, controls our inquiry. *Concannon,* 457 A.2d at 1354. We stated in *Concannon* that in order to establish procedural prejudice, "defendant must show that had the information been disclosed, there is a likelihood that trial counsel using the undisclosed information could have created a reasonable doubt in the minds of one or more jurors to avoid a conviction." *Id.*

Evidence was presented from a number of other witnesses regarding the defendant's possession of a gun. The existence of a gun, to which the defendant had access, was therefore not a crucial element of Hammond's testimony. We find that the defendant has not demonstrated that his prior awareness of Hammond's testimony would have significantly influenced the outcome of the case. Furthermore, for the trial justice to heed the defendant's request to pass the case at that stage of the proceedings would have been an overly exacting penalty for the state's inadvertent failure. The carefully worded curative instruction adequately and expediently cured any harm caused by Hammond's testimony.

*See State v. DeCiantis,* 501 A.2d 365, 367–68 (R.I.1985).

For the foregoing reasons the defendant's appeal is denied and dismissed, the judgment of conviction is affirmed, and the papers of the case are remanded to the Superior Court.